UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| GLENN HAYDEL AND LILLIAN HAYDEL | CIVIL ACTION |
| VERSUS | No. 09-3032 |
| HEALTHSMART BENEFIT SOLUTIONS, INC. F/K/A ADMINISTRATIVE GROUP, INC. | SECTION I/2 |

### ORDER AND REASONS

Before the Court is a motion to dismiss pursuant to Rule 12(b)(6) filed by defendant, the Regional Transit Authority ("RTA").[1] Plaintiffs, Glenn and Lillian Haydel, oppose the motion. For the following reasons, the motion is **DENIED**.

*BACKGROUND*

On September 21, 2009, plaintiffs amended their complaint to, among other things, add an allegation that RTA breached a contractual agreement, entered into on March 1, 2005, that required RTA to provide plaintiffs with health insurance benefits.[2] According to plaintiffs, the parties executed two contracts on March 1, 2005, that are relevant to RTA's alleged obligation to provide plaintiffs with health insurance benefits. A provision of one contract, the Stock Purchase Agreement,[3] obligated Interregional Transit, Inc. ("Interregional")[4] to provide plaintiff,

---

[1] R. Doc. No. 41.
[2] R. Doc. No. 26.
[3] The parties to the Stock Purchase Agreement are Interregional and Metro New Orleans Transit, Inc. ("Metro"), a company created by Glen Haydel to hold the TMSEL stock.
[4] Interregional is a company that was created for the purpose of purchasing the stock of Transit Management of Louisiana, Inc. ("TMSEL").

1

Glenn Haydel and his family with access to heath insurance benefits. Plaintiffs argue that a second contract, the Compromise Agreement,[5] obligated RTA to ensure that Interregional fulfilled its obligations, including the obligation to provide health insurance benefits.

On or about March 1, 2005, Glenn Haydel resigned as president of TMSEL.[6] Plaintiffs allege that the Stock Purchase Agreement and the Compromise Agreement were part of a separation agreement negotiated among Glenn Haydel, RTA, and TMSEL. Plaintiffs allege that in those contracts RTA warranted to plaintiffs that it would take any and all actions necessary to ensure that plaintiffs would have the right to participate in the TMSEL health plan after Haydel's resignation.[7]

In 2008, plaintiff, Lillian Haydel, underwent medical treatment.[8] Following that treatment, the insurer denied coverage.[9] Plaintiffs discovered that Lillian Haydel's coverage under the plan had terminated in December, 2007.[10]

Plaintiffs allege that RTA breached the Compromise Agreement by failing to ensure that plaintiffs would be guaranteed the right to participate in the TMSEL plan after Haydel's resignation.[11] Plaintiffs further allege that RTA was in bad faith when it breached this contract because it had no justification for the breach and that the decision to breach the contract was made out of spite toward plaintiffs.[12]

---

[5]The parties to the Compromise Agreement are Metro, Glenn Haydel, James J. Reiss, Jr., and RTA.
[6]R. Doc. No. 26, para. VIII.
[7]R. Doc. No. 26, paras. VIII, X.
[8]R. Doc. No. 1, para. VI.
[9]R. Doc. No. 1, para. VI.
[10]R. Doc. No. 1, para. VII.
[11]R. Doc. No. 26, para. XLIV.
[12]R. Doc. No. 26, para. XLV.

In its motion to dismiss, RTA argues that it was not a party to the Stock Purchase Agreement and thus has no obligation to provide plaintiffs with continued health care coverage. RTA argues that because it was not a party to this contract, RTA cannot be held liable for breaching the contract.[13]

## *STANDARD OF LAW*

A district court can dismiss a complaint, or any part of it, for failure to state a claim upon which relief can be granted if the plaintiff has not set forth a factual allegation in support of his claim that would entitle him to relief. Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1964-65, 167 L. Ed. 2d 929, 940 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." (citations and footnote omitted)); Cuvillier v. Taylor, 503 F.3d 397, 401 (5th Cir. 2007). This Court will not look beyond the factual allegations in the pleadings to determine whether relief should be granted. See Spivey v. Robertson, 197 F.3d 772, 774 (5th Cir. 1999); Baker v. Putnal, 75 F.3d 190, 196 (5th Cir. 1996). In assessing the complaint, a court must accept all well-pleaded facts as true and liberally construe all factual allegations in the light most favorable to the plaintiff. Spivey, 197 F.3d at 774; Lowrey v. Tex. A&M Univ. Sys., 117 F.3d 242, 247 (5th Cir. 1997).

"To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'" In re Katrina Canal Breaches Litig., 495 F.3d 191, 205 (5th Cir. 2007) (quoting Twombly, 127 S. Ct. at 1974, 167 L. Ed. 2d at 949). "[C]onclusory allegations and unwarranted deductions of fact are not admitted as true by a motion to dismiss." Id. (quoting Associated Builders, Inc. v. Ala. Power Co., 505 F.2d 97, 100

---

[13]R. Doc. No. 41-1.

(5th Cir. 1974)). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Twombly, 550 U.S. at 555 (internal citations omitted).

## *DISCUSSION*

Under Louisiana law, four elements are required for a valid contract: (1) the parties must possess the capacity to contract; (2) the parties' mutual consent must be freely given; (3) there must be a certain object for the contract; and (4) the contract must have a lawful purpose. Wallace v. Shreve Mem. Library, 79 F.3d 427, 430 n.4 (5th Cir. 1996) (citing Keller v. Sisters of Charity, 597 So.3d 1113, 1115 (La.App. 2 Cir. 1992)). When a party does not do what it is obligated to do under a contract, it breaches the contract. Nunn, Yoest, Principals & Assoc., Inc. v. Union Pacific Corp., No. 02-20818, 2003 WL 21356004 (5th Cir. May 23, 2003).

Plaintiffs argue that RTA breached its contractual obligation, created by the Stock Purchase Agreement, to provide the Haydel's with access to health insurance coverage.[14] Section 4(d) of the Stock Purchase Agreement provides:

> **Obligation Regarding Health Insurance.**  As President of TMSEL, Glenn A. Haydel and his spouse have been participants in the TMSEL employee health benefits program. During the transition of that program to a new third party administrator, Haydel and his spouse were not notified of their opportunity to participate in the TMSEL employee health benefits program at the same time as TMSEL's employees, and only recently have become, or are in the process of becoming, participants in the program. *Interregional warrants that it will take all necessary steps to ensure that Haydel and his spouse are considered plan participants to the extent necessary to trigger COBRA rights which would allow Haydel to purchase, at his expense, coverage for him and his wife.*

---

[14]Plaintiffs' amended complaint references the contracts executed between the parties on March 1, 2005.  See R. Doc. No. 26, para. X.  Although a Court ruling on a motion to dismiss generally relies only on the complaint and its proper attachments, a court is permitted to rely on documents incorporated into the complaint by reference.  Dorsey v. Portfolio Equities, Inc., 540 F.3d 333, 338 (5th Cir. 2008).

(italics added).[15]  Accordingly, by its terms, this section of the Stock Purchase Agreement obligates Interregional, to take all steps necessary to ensure that plaintiffs could participate in the TMSEL health plan.  Although the Stock Purchase Agreement clearly obligates Interregional to facilitate plaintiffs' ability to participate in the TMSEL employee health benefits program, RTA notes, correctly, that RTA was not a signatory to the Stock Purchase Agreement.  RTA contends that because it was not a party to the Stock Purchase Agreement, it cannot be liable for its breach.

Plaintiffs allege that RTA owes plaintiffs an obligation to provide health insurance because the Stock Purchase Agreement, entered into by Interregional and Metro, should be read together with the Compromise Agreement, entered into by Metro, Glenn Haydel, and RTA, which was also executed on March 1, 2005.[16]  In support of this contention, plaintiffs point to Section 3.1 of the Compromise Agreement, which reads as follows:

> **3.1 Interregional's Purchase of TMSEL:** The parties acknowledge that contemporaneously with this Agreement, RTA has entered into a cooperative endeavor agreement entitled "Transit System Cooperative Endeavor Agreement between Regional Transit Authority and Interregional Transit, Inc." which, among other things, obligates Interregional to purchase all of the capital stock of TMSEL ("TMSEL Stock") from Metro. The parties also acknowledge that the stock transaction will be accomplished by a separate instrument executed by Interregional and Metro. Metro warrants that it owns the TMSEL stock free and clear of any liens and encumbrances, and that it will consummate the transfer of TMSEL Stock to Interregional. Haydel agrees to the transfer, and warrants that he will perform all actions necessary to complete the transfer in his capacity as Metro's shareholder, its director, and its President. <u>RTA agrees to the transfer</u> and warrants that it will perform all actions necessary to facilitate the stock transfer, <u>and warrants that Interregional will consummate the transaction</u>. The completion of the stock transfer described in this paragraph is a condition of all parties' obligations under this Agreement.

---

[15]R. Doc. No. 46-1, § 4(d).
[16]R. Doc. No. 46, pp. 2-3.

(italics and underline added).[17]

Plaintiffs essentially argue that the provision wherein RTA agrees to "warrant[] that Interregional will consummate the [Stock Purchase Agreement]," causes RTA to step into Interregional's shoes with respect to the Stock Purchase Agreement. Plaintiffs allege that this provision obligates RTA to assume the guarantee made by Interregional in section 4(d) of the Stock Purchase Agreement "that it will take all necessary steps to ensure that Haydel and his spouse are considered plan participants to the extent necessary to trigger COBRA rights which would allow Haydel to purchase, at his expense, coverage for him and his wife."[18]

Reading the aforementioned contract provisions together in the light most favorable to plaintiffs, the Court finds that plaintiffs have stated a claim for breach of contract by RTA. Plaintiffs have alleged that each of the contracts they put forth contemplates the other's existence and effect. Section 3.1 of the Compromise Agreement does reference the purchase of TMSEL stock by Interregional, which was to be effected by the Stock Purchase Agreement. In particular, that provision states that RTA will do all that is necessary to facilitate the stock transfer and that RTA warrants Interregional will consummate the stock transfer. Accordingly, the Court finds that plaintiffs have set forth factual allegations in support of their breach of contract claim that, if true, would entitle them to relief.

## *CONCLUSION*

For the reasons stated above,

**IT IS ORDERED** that the motion to dismiss filed by the defendant is **DENIED**.

---

[17] R. Doc. No. 46-2, § 3.1.
[18] R. Doc. No. 46-1, § 4(d).

**IT IS FURTHER ORDERED** that the motion to set hearing on the motion to dismiss party filed by RTA[19] is **DISMISSED AS MOOT**.

New Orleans, Louisiana, April 9, 2010.

                                    _____
                                              LANCE M. AFRICK
                                     UNITED STATES DISTRICT JUDGE

---

[19] R. Doc. No. 68.